NOT RECOMMENDED FOR PUBLICATION
File Name: 04a0111n.06
Filed: November 18, 2004

No. 04-5021

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PEGGY L. SIMONS,                           )
                                           )
        Plaintiff-Appellant,               )      ON APPEAL FROM THE UNITED
                                           )      STATES DISTRICT COURT FOR THE
v.                                         )      MIDDLE DISTRICT OF TENNESSEE
                                           )
JO ANNE B. BARNHART, Commissioner of )            O P I N I O N
Social Security,                           )
                                           )
        Defendants-Appellees.              )
                                           )
                                           )

Before: MOORE and SUTTON, Circuit Judges; and ADAMS, District Judge.[*]

        **ADAMS, J.**  Peggy Simons applied for Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI) in 1999.  After a hearing, the Administrative Law Judge (ALJ)

determined that Simons was suffering from a severe impairment and was unable to perform her past

relevant work, but concluded that she could perform a significant number of sedentary jobs in the

national economy.  Simons sought judicial review of the decision, and the district court affirmed the

denial of benefits.  On appeal, Simons argues that the ALJ erred in making his determination.  She

requests that this Court either reverse or remand the district court's decision.  For the reasons set

forth below, however, we affirm.

---

[*] The Honorable John R. Adams, United States District Judge for the Northern District of
Ohio, sitting by designation.

## I.   STATEMENT OF FACTS

At the time of the ALJ's hearing, Simons was forty-two years old.  She has alleged that she became disabled in 1999.  Initially, she claimed that her disability and inability to work were due to a spinal impairment.  She has since alleged that her disability is also based on additional exertional and non-exertional problems, namely, past hand and tendon injuries, asthma, fatigue, memory and concentration problems, anxiety, and depression.

### A.   Medical History

Several medical professionals have examined and treated Simons during the time frame relevant to the Court's decision herein.  A summary of the notable examinations and treatments follows:

(1)   In April of 1999, Simons complained of neck and shoulder pain to Dr. Robert Gaston.  Dr. Gaston prescribed anti-inflammatory medicine and an analgesic pain reliever.  He referred Simons to an orthopedist when there was no improvement in her symptoms.

(2)   In October of 1999, Dr. William Schooley examined Simons and ordered magnetic resonance imaging (MRI).  The MRI revealed a large disc herniation at the C5-C6 level, with moderate to severe foraminal stenosis.  Dr. Schooley surgically treated Simons by performing a cervical discectomy and fusion.  Upon later examination, Dr. Schooley noted Simons was improving.  Later that year, however, Dr. Schooley ordered a myelogram because Simons began experiencing pain in her neck, left arm, lower back, and left leg.  The myelogram revealed no cervical abnormalities, but did show minimal epidural defects.

Dr. Schooley also treated Simons for a spasm in her neck and for low back pain. He ordered computed tomography (CT Scan) of her lumbar spine and an MRI. The CT scan revealed mild disc bulges, but no high grade stenosis or compression of the nerve roots. The MRI revealed some disc degeneration and bulging, but no significant stenosis. Dr. Schooley later evaluated Simons's functional capacity and found the following: Simons could sit for a total of six or more hours in an eight hour day; stand and/or walk for a total of six or more hours in an eight hour day; lift up to nineteen pounds frequently; carry up to nine pounds frequently; lift up to forty-nine pounds occasionally; and, carry up to nineteen pounds occasionally. He concluded that Simons could not bend, squat, crawl, climb, or reach above her shoulder. He indicated no environmental restrictions and found she could use her hands for grasping, pushing, pulling, and fine manipulation. He noted that she could use her feet and legs for repetitive movements. Lastly, Dr. Schooley indicated that Simons would have a moderate limitation in her overall functional ability due to pain and fatigue.

(3)     In January of 2000, Dr. Bruce Jackson examined Simons on behalf of the state agency. He noted a limited range of motion in her neck, but found she exhibited a normal range of motion in all other areas. He examined her hands and noted a prior left hand crush injury and right hand tendon injury. Both of Simons's hand injuries were treated surgically and although she had full motion in her wrist and fingers, Dr. Jackson noted that she still suffered from reduced sensation, mild finger opposition, and grip weakness. He noted that all other musculoskeletal and neurological examinations were normal. Based on his findings, Dr. Jackson opined that Simons could sit for eight hours of an eight hour workday and stand/walk for less

3

than six hours. He estimated she could lift and carry up to ten pounds frequently and up to twenty pounds on occasion. He noted her limited neck and shoulder movement, and recommended a restriction of limited exposure to heat and humidity, along with restrictions against irritating inhalants, work involving climbing or heights, and work requiring use of a forceful grip.

(4)     In January of 2000, Dr. Jeri Lee, a psychologist, also examined Simons at the request of the state agency. Dr. Lee evaluated Simons in light of her complaints of memory problems, concentration problems, depression, panic attacks, crying spells, sleep and appetite problems, and low energy. Dr. Lee's examination did not evidence Simons's alleged non-exertional impairments. She noted Simons was experiencing a mild impaired ability to socially interact and adapt, but Dr. Lee refrained from diagnosing a mental impairment. Further, Dr. Lee assigned Simons a Global Assessment Function (GAF) score of 70, which indicates only mild symptoms and ability to function. She determined that Simons functioned at a fourth grade level in mathematics and at a sixth grade level in reading.

(5)     Beginning in November of 2000, Dr. John Culclasure evaluated Simons and treated her for pain with lumbar facet blocks and epidural steroid injections. He diagnosed her with lumbar spondylosis, lumbar degenerative disc disease, and lumbar radiculopathy.

**B.     Testimony of Simons and Her Mother**

Simons testified at the hearing as to both her exertional and non-exertional impairments. With respect to her exertional impairments, she testified to pain in her lower back and down her left leg. She also testified to having muscle spasms in both of her shoulders. Simons claimed

4

her lower back pain was worse than her upper back pain. The pain, which Simons said was constant, would sometimes abate and then she could move around a lot. She testified that she was taking pain medication, specifically Lortab, but that it carried no side effects and it helped the pain.

Simons claimed her pain was worse when she was on her feet for long periods of time or when she sat for long periods of time. She testified that the only thing that made her pain better was lying down. She said she was using a spinal cord stimulator, an implanted device, for the pain. Simons also testified to having tried nerve blocks, steroid injections, and physical therapy. None of these, according to Simons, alleviated her pain.

Simons stated she could not lift or carry over five pounds and she could not bend over or pick up objects. She also claimed she could not crawl or climb a ladder. She testified she could use her hands as long as she did not need to grip anything because her hands sometimes shake and go numb. According to Simons, she often had to use both hands to do things like pick up a skillet or a gallon of milk. Simons also testified she could raise her arms to head height, but no higher.

Simons, a smoker, stated she has asthma, which affects her ability to breathe while walking or going up and down steps. However, she testified that she could go up ten steps, or walk approximately a half of a block, before she had to rest. Simons used an inhaler twice a week for her asthma. She testified that she often felt fatigued and that her fatigue was brought on by heat, stress and worrying.

As to her daily activities, Simons testified she had difficulty driving, but could do limited household chores, sometimes requiring assistance from her fourteen-year old son. According to Simons, she was forced to lie down often during the day. She did not engage in any social activities and her entertainment consisted of watching television and renting movies. She testified that she had to move around frequently, changing positions often, to help alleviate the pain. Despite the pain, Simons was able to perform her personal grooming.

With respect to her non-exertional impairments, Simons testified that she was seeing a psychiatrist. He was not, however, willing to evaluate her for purposes of her claim because she was a relatively new patient. She did testify to taking medication for depression, but again claimed that the medication alleviated her symptoms and carried no side effects.

Simons testified that she could read and write. She claimed to have been an average student, with math and English being her strong subjects. In response to the ALJ's questioning, Simons testified to her ability to write a letter and count change.

Simons's mother, Patricia Woodson, testified on her daughter's behalf. According to Woodson, Simons had difficulty performing everyday tasks. Woodson testified that Simons needed help sitting and rising. She also testified that Simons was in a great deal of physical pain every day. According to Woodson, Simons could not sit , stand, or bend. She claimed that Simons was always in pain and that her hand and neck hurt. Woodson testified that Simons was getting progressively worse. She stated that Simons used to work hard, but that she was unable to work or do the things she used to do. Woodson claimed that Simons slept a lot and complained constantly about the pain. Woodson corroborated much of Simons's testimony

regarding her inability to sit, drive, and hold onto objects. Woodson also claimed that Simons's personality changed and that she became "temperamentally ill." Lastly, Woodson testified that Simons was unable to complete household tasks unassisted.

### C.    Past Relevant Work Experience & Vocational Expert Testimony

Simons completed the eleventh grade, but never earned her GED credential. Her past relevant work experience consisted of jobs as a paint line worker, a factory laborer, a grill cook, a machine operator, and a carpet installer. The vocational expert, Dr. Kenneth N. Anchor (VE), classified Simons's past jobs in the range of unskilled to semiskilled, light to medium exertion. He testified that Simons could not perform her past relevant work with the restrictions under which she was operating, but stated there were other light and sedentary jobs she could perform in the Tennessee regional economy. According to the VE, there were a number of jobs available, such as time keeping clerk or telephone operator.

Approximately two-thirds of the jobs would be eliminated, however, for a person who was limited to occasional use of both hands for fingering, feeling, or handling. When asked if the jobs would be reduced by two-thirds using Dr. Schooley's medical assessment, the VE testified that the jobs would not be reduced. The available jobs did not require significant bending, squatting, crawling, climbing, or reaching above the shoulder level. They did require literacy, which ideally would be a high school education or GED, but the VE stressed that literacy was the basic requirement. In other words, a person with good oral communication skills who was mature, stable, motivated, and willing to learn, could perform the jobs to which the VE cited. The ALJ asked the VE to assume Simons's testimony was fully credible.

Assuming Simons's difficulties were as severe, chronic, unremitting, and unresponsive to treatment as she claimed, the VE testified that there would not be any full-time jobs available to her.

## II. PROCEDURAL HISTORY

Simons applied for DIB on December 2, 1999 and SSI on November 10, 1999, alleging she had been disabled since July of 1999. Her applications were denied both upon initial review and upon reconsideration. Simons requested a hearing before the ALJ and one was held on March 15, 2001. On May 24, 2001, the ALJ issued a decision in which he concluded that Simons was not disabled. Although the ALJ found that Simons had a severe impairment, he determined that she retained the residual functional capacity to perform a significant range of sedentary work.

Simons requested review of the ALJ's decision. The Appeals Council of the Social Security Administration considered the request, but ultimately denied it. The ALJ's decision became the final decision of the Commissioner of Social Security. Simons then filed a civil action in the United States District Court for the Middle District of Tennessee. The lower court granted the Commissioner's Motion for Judgment on the Administrative Record, which was a final and appealable order. It is from that order that Simons appeals.

## III. STANDARD OF REVIEW

The standard of review in this area is limited. Unless the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record, we must affirm the Commissioner's conclusions. 42 U.S.C. § 405(g); *see*

*also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). We must affirm a decision supported by substantial evidence even if there is substantial evidence in the record to support an opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## IV.    ANALYSIS

Simons raises three issues on appeal. First, she contends that the ALJ erred in finding her testimony was not credible and in discounting the testimony of her lay witness. Second, she claims that the ALJ erred by not considering the combined effects of all her exertional and nonexertional limitations. Third, Simons asserts that the VE's opinion was inadequate to support his finding that there were jobs in the national economy she could perform because the ALJ's hypothetical disregarded her testimony.

### A.    Credibility of Simons's Testimony and Testimony of Lay Witness

According to Simons, the ALJ erred in disregarding her subjective complaints of pain and her alleged inability to engage in various forms of activity. The law on this precise issue, however, is well-established. While there is no question that subjective complaints of a claimant can support a claim for disability, there must be objective medical evidence of an underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted).

In this case, the objective medical evidence in the record indicates that Simons was suffering from multiple impairments, a fact the ALJ recognized when he found she was suffering from a "severe impairment." The ALJ, however, was not bound to accept Simons's subjective complaints if the evidence in the record demonstrated otherwise. *See id.* at 476 ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."). Accordingly, his decision that Simons's testimony was not credible will stand if his credibility determination was reasonable and supported by substantial evidence. *Id.*

Having examined the record, this Court finds that there was substantial evidence to support the ALJ's conclusion that Simons's testimony was not credible. First, Dr. Schooley, Simons's own physician evaluated her functional capacity and found, among other things, that she could sit for six or more hours in an eight hour workday and stand or walk for a total of six or more hours. He also estimated that she could lift and carry certain amounts of weight either frequently or occasionally. Although he indicated some restrictions, he did not determine that Simons was incapable of working. Second, Dr. Jackson, the state's examining physician, recognized Simons's limitations and offered some restrictions, but he also did not determine that she was incapable of working. Third, the state's psychological examiner found that Simons's non-exertional problems were neither evidenced during the examination nor consistent with previous reporting. She also assigned Simons a GAF score that indicated only mild symptoms and an ability to function.

Furthermore, the record shows that Simons's surgery was successful and no further surgeries were contemplated. The ALJ noted that Simons was taking medication for her pain, but Simons herself stated that the medication she was taking for both her exertional and non-exertional impairments presented no side effects and helped her ailments. The Court agrees with the Magistrate Judge that the ALJ may have wrongly characterized Simons's daily activities as wide ranging, but substantial evidence in the record otherwise supported the ALJ's decision to discount her testimony.

In an attempt to convince this Court otherwise, however, Simons attempts to point out those facts that bolster her credibility. Yet, even if there is evidence in the record to support Simons's position and even if she is credible, this Court cannot reverse the lower court when there is still substantial evidence supporting the ALJ's decision. *See Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (holding that the district court erred in reversing the ALJ where there was substantial evidence in the record to support the opposite finding).

Simons takes issue with the ALJ's apparent decision to disregard Woodson's testimony as well. The testimony of lay witnesses, however, is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians. *Lashley v. Sec'y of Soc. Sec.*, 708 F.2d 1048, 1054 (6th Cir. 1983) (citation omitted). In the instant case, the ALJ did not err in failing to accord substantial weight to Woodson's testimony because her testimony is also not supported by Simons's treating physician.

Simons's argument that the ALJ erred in not discussing Dr. Culclasure's diagnosis is also not well-taken. "Although required to develop the record fully and fairly, an ALJ is not required

11

to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). Nevertheless, this Court may review Dr. Culclasure's report, in its consideration of the record as a whole, to determine if the ALJ's decision was based on substantial evidence. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

In examining the report, the Court first notes that Dr. Culclasure does not provide an evaluation of Simons with respect to her functional capacity. Rather, his report merely reiterates Simons's subjective complaints with respect to pain, and his diagnosis and plan for treatment. Furthermore, the fact that Dr. Culclasure made a diagnosis does not itself mandate reversal because the ALJ already conceded that Simons had a severe impairment. The issue is not whether Simons had a diagnosed impairment, but whether there is substantial evidence in the record demonstrating that Simons retained the residual functional capacity to work.

**B.** **Combined Effect of Exertional and Non-Exertional Limitations**

Simons next argues that the ALJ erred by failing to evaluate her exertional and non-exertional impairments and pain. The Court recognizes a claimant may be found disabled by virtue of the combined effect of impairments; however, the ALJ did consider the combined effect of Simons's impairments. *See generally Mowery v. Heckler*, 771 F.2d 966, 971 (6th Cir. 1985) (finding it necessary to consider the claimant's impairments in combination). First, as the Court discussed above, the ALJ was permitted to discredit Simons's subjective evaluation of pain because it was not supported by objective medical evidence. Second, the ALJ did consider the impairments to her hands. He noted that she was not currently seeking treatment and he

12

questioned the VE as to whether the number of jobs available would be reduced if an individual had limitations with respect to handling, fingering, and feeling.

In determining whether Simons's past injuries to her hands affected her future ability to engage in substantial gainful employment, the ALJ relied on the reports of Dr. Schooley and Dr. Jackson. Simons takes issue with the ALJ's reliance on this evidence and his decision that objective medical evidence did not support her inability to use her hands. She argues that just because she may have adjusted to the old impairment, it still exists and may be severe. The burden to produce evidence of this severity, however, was on Simons. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citations omitted) (noting the claimant has the burden of proving a severe impairment). The objective medical evidence, as well as Simons's own testimony, evidences a ten percent disability in both hands left over after what were apparently successful surgeries. The only evidence to the contrary was Simons's own testimony and that of her mother, which the ALJ was entitled to discount.

More importantly, however, is the fact that the ALJ did consider the combined effect of Simons's impairments. As his decision demonstrates, the ALJ considered Simons's objective physical impairments, her subjective assessment of pain, her claimed depression and cognitive impairments, and her education. He also took these factors into account when he questioned the VE. Furthermore, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health and Human Serv.*, 901 F.2d 1306, 1310 (6th Cir. 1990)

13

(quoting *Gooch v. Sec'y of Health and Human Serv.*, 833 F.2d 589, 592 (6th Cir. 1987)). Here, the ALJ specifically stated that he was obligated to consider all symptoms, including pain. He also found that Simons had an impairment, or combination of impairments, which was severe. Just because the ALJ did not separately discuss Simons's multiple impairments does not mean the he did not consider their combined effect.

### C.    VE's Response to the ALJ's Hypothetical Question

Lastly, Simons takes issue with the questions the ALJ asked the VE, and with the ALJ's determination that there are jobs existing in significant numbers in the national economy that Simons can perform. As previously stated, the ALJ was entitled to find Simons's testimony not fully credible and take this fact into account during his questioning. Because of this, it is irrelevant that the VE opined that there would be no jobs Simons could perform given her subjective assessment of pain and ability.

Simons also claims that the jobs to which the VE cites are not available in a significant number in the national economy. She argues that these jobs are not available to her because she cannot drive or take the bus. While travel to and from work is a factor to be considered, travel can only be considered as an intrinsic factor concerning a claimant's condition, not as an extrinsic factor, such as where a claimant has chosen to live in relation to identified regional jobs. *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999).

Here, Simons testified she could walk to the bus station, which is a block and a half from her doorway. She also testified she could use the bus with no problem. Furthermore, she testified as to her ability to walk a half a mile and do short distance driving. "A person,

14

otherwise able to work, is in effect offered a choice: he can choose either to commute the distance to his job or he can move closer and avoid the expense and inconvenience." *Id.* The fact that Simons may not be able to travel long distances is an extrinsic factor that the ALJ properly chose not to consider.

## V. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's decision.