**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0711n.06

**Case No. 20-5113**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Dec 21, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JEFFREY DEANER, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee. | ) | |

BEFORE:    COLE, Chief Judge; McKEAGUE and WHITE, Circuit Judges.

COLE, Chief Judge.  Jeffrey Deaner appeals a district court decision affirming the Social Security Administration's denial of supplemental security income and disability insurance benefits.  Deaner contends that the administrative law judge ("ALJ") erred at two points in the five-step analysis: at the second-step determination of severe impairments and the third-step determination of per se disabilities.  Because the ALJ's determinations were supported by substantial evidence, we affirm the judgment of the district court.

## I.  BACKGROUND

Deaner filed for disability insurance benefits and supplemental security income benefits, claiming disability due to seizures, vertigo, panic attacks, back problems, agoraphobia, migraines, high-blood pressure, short-term memory problems, dyslexia, learning disabilities, and tingling, numbness, and swelling in his feet.  The ALJ evaluated Deaner's disability claim pursuant to the

five-step process promulgated by the Commissioner of Social Security. *See* 20 C.F.R. § 404.1520. At the first step of the process, the ALJ found that Deaner had not engaged in substantial gainful activity since the alleged onset date. At the second step, the ALJ found that Deaner has the following severe impairments: lumbar spine degenerative disc disease, seizure disorder, hypertension, vertigo, inflammatory bowel disorder, obesity, hepatic steatosis, migraines, anxiety disorder, depression, attention deficit hyperactivity disorder, and below-average intellectual functioning.

In reaching his second-step conclusions, the ALJ discounted the one-time diagnoses made by the Commissioner's consultative examiner, Marcy Walpert, M.A., LPP. Ms. Walpert conducted a clinical interview with Deaner and a mental status examination that revealed a full-scale IQ of 44. Ms. Walpert diagnosed Deaner with moderate to severe neurocognitive disorder, moderate intellectual disability, learning disorder in reading, panic disorder with agoraphobia, and severe social anxiety. Two state agency psychological consultants, Dr. Bornstein and Dr. Prout, considered Ms. Walpert's findings and found them unpersuasive and inconsistent with the evidence in the record from other providers. The ALJ agreed and found that Ms. Walpert's diagnoses amounted only to non-severe impairments.

At step three, the ALJ determined that Deaner did not have an impairment that meets or medically equals any of the enumerated impairments that the Social Security Administration categorizes as per se disabilities.

Before proceeding to steps four and five, the ALJ assessed Deaner's residual functional capacity ("RFC"). The ALJ considered the record as a whole, including all severe and non-severe impairments, when developing the RFC. The ALJ extensively discussed Ms. Walpert's consultative examination. Based on all of Deaner's impairments and symptoms, the ALJ

determined that Deaner could perform a range of light work. The RFC included a series of limitations, finding that Deaner could not operate a motor vehicle, work around dangerous machinery, or at unprotected heights. The ALJ further found that Deaner could carry out only simple instructions and only occasionally interact with the public.

At step four, based on Deaner's RFC and the testimony of a vocational expert, the ALJ found that Deaner was unable to perform any of his prior jobs.

At step five, the ALJ considered Deaner's age, education, experience, and residual functional capacity and determined that there were a significant number of jobs in the national economy that he would be capable of performing. As a result, the ALJ found that Deaner was not disabled under the Social Security Act.

Deaner appealed the ALJ's decision to the agency's Appeals Council, then the district court. The district court affirmed the agency's decision, and this appeal followed.

## II. ANALYSIS

### A. Standard of Review

In Social Security cases, this court reviews district court decisions de novo. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). In turn, we must affirm an ALJ's conclusions unless the ALJ "failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). This standard does not permit the reviewing court to "resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509. So long as substantial

evidence supports the ALJ's decision, this court will not reverse the ALJ's determination "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### B. Legal Framework for Evaluating Disability Claims

To receive disability benefits, a claimant must be "disabled," as defined by the Social Security Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(3)(A).

Agency regulations set forth a five-part test that ALJs must follow to determine whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520. This court has summarized the five-step analysis as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529.

The claimant bears the burden of production at steps one through four. At step five, the burden shifts to the Commissioner to prove that the claimant can perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2).

## C. The ALJ's Step Two Finding of Severe Impairments

### 1. *Substantial Evidence*

A severe impairment is an impairment "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A claimant bears the burden of proving that an impairment is severe. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).

The ALJ found that Deaner had numerous severe mental impairments: anxiety disorder, depression, attention deficit hyperactivity disorder, and below-average intellectual functioning. Deaner contends that the ALJ should have found the following additional severe impairments: moderate intellectual disability, moderate to severe neurocognitive disorder, learning disorder in reading, and panic disorder with agoraphobia.

Although the consultative examiner, Ms. Walpert, made one-time diagnoses of the four impairments that Deaner contends should have been designated severe, the ALJ determined that these diagnoses were not persuasive and fully recorded the reasons for that conclusion. For one, Ms. Walpert did not review any of Deaner's records and her diagnoses were based on a one-time

examination. Deaner's mental status examinations in the record were "frequently normal." And despite Deaner's claims of severe anxiety, the record showed he attended appointments with medical providers frequently, maintained rapport, and was described as pleasant and cooperative. Second, Ms. Walpert did not provide a rationale for the neurocognitive disorder and intellectual disability diagnoses given Deaner's history in semi-skilled jobs, such as a janitor and security guard. Third, the ALJ found that Deaner did not exhibit the signs of the severe incapacities that would typically be associated with an IQ of 44. Finally, two state agency psychological consultants found Ms. Walpert's findings to be unpersuasive and inconsistent with other evidence in the record.

Deaner ultimately argues that the ALJ should have given more weight to Ms. Walpert's diagnoses. However, we may not second-guess the weight the ALJ gave the evidence nor his credibility determinations. *See Bass*, 499 F.3d at 509. Because the ALJ's designation of severe impairments was supported by substantial evidence, our inquiry on step two ends.

### 2. *Harmless Error*

Even if the ALJ's finding were not supported by substantial evidence, any error would be harmless. The step-two finding of a severe impairment is a threshold inquiry. *See* 20 C.F.R. § 404.1523(c). So long as the ALJ finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or non-severe is "legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Here, the ALJ found multiple severe impairments and properly considered all impairments in the following steps. Therefore, the district court correctly decided that any possible error in categorizing impairments would be harmless.

**D. The ALJ's Step Three Finding of No Per Se Disability**

Deaner challenges the ALJ's determination at step three that he did not meet or medically equal Impairment Listings 12.05 (intellectual disorder) and 12.06 (anxiety). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05, 12.06. If the claimant meets a listed impairment (or its medical equivalent), the claimant will be found disabled per se and the ALJ will not proceed with the remaining steps. 20 C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments catalogs impairments that the agency considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

A claimant must satisfy all the medical criteria of the listing to be deemed disabled in step three. Alternatively, a claimant may prove that her impairment is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). In either case, the claimant bears the burden of offering evidence to establish each element of the listing. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

To demonstrate that he meets or medically equals Impairment Listing 12.05(B), Deaner must show:

1. an IQ score of 70 or below;
2. "extreme limitation of one, or marked limitation of two, of the following areas":
    a. "understand, remember, or apply information;" or
    b. "interact with others;" or
    c. "concentrate, persist, or maintain pace;" or
    d. "adapt or manage oneself;" and
3. that the disorder began before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

To demonstrate that he meets or medically equals Impairment Listing 12.06, Deaner must show:

1. medical documentation of panic disorder; and
2. "extreme limitation of one, or marked limitation of two, of the following areas":
    a. "understand, remember, or apply information;" or
    b. "interact with others;" or
    c. "concentrate, persist, or maintain pace;" or
    d. "adapt or manage oneself."

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.06.

The "extreme" or "marked" limitation requirement is the same in Impairment Listing 12.05 and 12.06. In the case of both listings, the ALJ found that Deaner was not per se disabled because he did not meet his burden of proving an extreme or marked limitation in any of the four listed areas.

An extreme limitation means the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.00(F)(2)(e). A marked limitation means the claimant's functioning is "seriously limited." *Id.* at (F)(2)(d). The ALJ found that Deaner had only a moderate limitation in each of the four categories, which means his functioning was "fair." *Id.* at (F)(2)(c).

First, substantial evidence supports the ALJ's finding that Deaner has only a moderate limitation in understanding, remembering, or applying information. The ALJ notes that during a 2014 mental status examination, Deaner was able to remember two of three objects after ten minutes, repeat two sets of three digits forward and two sets of two digits backwards, name two of the three most recent presidents, and remember other historical facts. The ALJ discounted Ms. Walpert's 2018 consultative examination in which Deaner could not remember any presidents or recall any information during testing as inconsistent with the record. Deaner argues that it was

error to rely on a 2014 examination while discounting Ms. Walpert's diagnoses in 2018 because his condition deteriorated since 2014. Deaner points to general evidence that neurocognitive disorders might be expected to worsen. But the ALJ reasonably found nothing in the record to indicate a "significant exacerbation in mental impairment or decline in mental functioning to justify the difference in presentations at the different consultative examinations." Although Deaner suggests that the ALJ should have given more weight to the recent consultative examination, the ALJ reasonably weighed the evidence to find a moderate limitation.

Second, substantial evidence supports the ALJ's determination that Deaner has only a moderate limitation in interacting with others. The ALJ explained that Deaner reported talking to family two to three days a week and spending time with friends. Deaner reported that he did not get along well with authority figures, but also said he never lost a job for failing to get along with others. Deaner argues that the ALJ ignored his panic disorder with agoraphobia diagnosis, which would indicate more substantial limitations in interacting with others. But the ALJ noted the diagnosis, reasonably found that it was not severe, and made a determination about Deaner's capacity to interact with others based on substantial evidence of Deaner's interactions with friends, family, and doctors in the record.

Third, substantial evidence supports the ALJ's finding that Deaner has only a moderate limitation in concentrating, persisting, or maintaining pace. The ALJ pointed to a mental examination which showed that Deaner's concentration and attention were age-appropriate, but that he had some memory impairment. The examination showed that Deaner's fund of knowledge was within the normal limits. The ALJ also considered Deaner's testimony that he could only pay attention for a few minutes and does not handle stress well. Deaner argues that the ALJ should have relied on Ms. Walpert's findings, his girlfriend's report, and his hallucinations. But the ALJ's

decision not to do so was reasonable and within his discretion to weigh the evidence and make credibility determinations. An ALJ need not cite every piece of evidence in the record and "an ALJ's failure to cite specific evidence does not indicate it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)).

Fourth, substantial evidence supports the ALJ's finding that Deaner has only a moderate limitation in adapting or managing himself. While Deaner claimed that he needed reminders to groom himself and claimed to be unable to stand to perform household tasks and get from the car to the house, the ALJ found that this testimony was inconsistent with Deaner's prior statements and medical records. The ALJ noted that in a consultative examination Deaner said he was able to perform basic chores with help from family and in another consultative exam he said he was able to groom himself independently. The ALJ also found that the medical records and physical examination did not support an inability to stand. Deaner had not mentioned this issue to any medical providers before. The ALJ thus reasonably determined that, on the whole, Deaner's limitations in adapting or managing himself were only moderate.

Because Deaner bears the burden of proving every element of Listing 12.05 and failed to meet his burden under 12.05(B)(2), he cannot prevail even if he shows that he meets (B)(1) and (B)(3). His arguments under both elements are therefore unavailing. The district court's determination that Deaner failed to prove that his mental impairment began before age 22 is not relevant insofar as the district court properly determined that the ALJ had substantial evidence to dispose of the issue at (B)(2). And the ALJ's decision to discount Deaner's IQ score is not error because an ALJ is not required to accept an IQ score that is inconsistent with the record. *Baker v. Comm'r of Soc. Sec.*, 21 F. App'x 313, 315 (6th Cir. 2001). Nor did the ALJ run afoul of agency

guidelines in doing so. The agency's program operations manual states that information about the claimant's "daily activities and current behavior" are "required" to determine the severity of an intellectual disability. POMS: DI 24515.055. This is consistent with the introduction to the section on mental disorder listings which states that an ALJ will presume the IQ score is accurate "unless evidence in the record suggests otherwise." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(H)(2)(d). Therefore, the ALJ was permitted to discount the IQ score under agency regulations and this circuit's case law.

## III. CONCLUSION

The administrative record contains substantial evidence to support the Commissioner's conclusion that Deaner is not disabled within the meaning of the Social Security Act. We therefore affirm the judgment of the district court.

**HELENE N. WHITE, Circuit Judge, dissenting.**

I would reverse the judgment of the district court on the bases that the ALJ's determination that Deaner's diagnosis of panic disorder with agoraphobia was a non-severe impairment was not supported by substantial evidence; the failure to recognize Deaner's panic disorder with agoraphobia as a severe impairment was not harmless error; and the ALJ's determination that Deaner's condition did not meet or medically equal Impairment Listing 12.06 (anxiety), 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05, 12.06, was not supported by substantial evidence.

**I.**

The record shows that the ALJ's failure to designate Deaner's panic disorder with agoraphobia as severe was not supported by substantial evidence. As an initial note, the ALJ's order stated, "the claimant has the non-severe impairments of moderate intellectual disability, moderate to severe neurocognitive disorder, learning disorder in reading, and panic disorder with agoraphobia." R. 8-2, PID 51. But immediately following that statement the ALJ opines that these were "one-time diagnoses," that were "wholly inconsistent with the other evidence of record." *Id.* Thus, it is apparent that the ALJ did not find that Deaner's moderate intellectual disability, moderate to severe neurocognitive disorder, learning disorder in reading, and panic disorder with agoraphobia were non-severe conditions; rather the ALJ determined that the diagnoses were incorrect, or at least not supported in the record, and therefore did not credit Deaner with having the relevant diagnoses at all.[1]

Admittedly the record varies somewhat with respect to most of these diagnoses, and the ALJ's dismissal of some of the diagnoses was not without support. That cannot be said for the

---

[1] This conclusion is also supported by a comparison of the diagnoses the ALJ deemed severe with the diagnoses the ALJ deemed non-severe. It would be illogical to find that anxiety disorder is a severe impairment, but panic disorder with agoraphobia, a more significant form of anxiety, is not. The same goes for finding Deaner's "below-average intellectual functioning" is severe, but "moderate intellectual disability" is non-severe.

diagnosis of panic disorder with agoraphobia, however. The ALJ's decision to dismiss Deaner's agoraphobia diagnosis was contrary to clear and consistent evidence in the record, and therefore was not supported by substantial evidence. The ALJ disregarded all three of Deaner's consultative examinations, in their entirety, based on a finding that they were "inconsistent with the record." But the consultative examiner's reports were quite consistent, despite being conducted years apart and by different examiners hired by the state. Susan Lear, Psy.D., examined Deaner in April 2014, and noted in her analysis of Deaner's "current specific manifestations of [] mental disorder," that he reported tending to "isolate himself from others," as well as being "fearful of social situations." R.8-8, PID 1009. Jodi Bauer, MA, LPP, examined Deaner in October 2017, and noted that one of Deaner's chief complaints was "problems being in crowds." *Id.* at PID 995. Bauer also noted that Deaner reported panic attacks "2 times a week triggered by being in social settings." *Id.* at PID 997. Bauer reviewed Deaner's provider records and found that Deaner had been diagnosed with panic disorder, and that there were reports of agoraphobia in his medical records. Bauer's diagnostic impression was that Deaner was experiencing generalized anxiety disorder "with panic attacks." *Id.* at PID 1000. Marcy Walpert, M.A., LPP, examined Deaner in May 2018. Walpert noted that Deaner reported "a lot of anxiety and panic feelings several times per week," and diagnosed Deaner with "panic disorder with agoraphobia." *Id.* at PID 892, 896. Although the consultative examiner's evaluations of Deaner's panic attacks and anxiety became more severe over time, that is consistent with Deaner's medical record, and it was therefore unreasonable for the ALJ to dismiss these reports as inconsistent with the records. At least as concerns Deaner's panic disorder, the examiner's reports appear quite consistent with the records.

Deaner's mental-health provider's notes from September 2015 state that he considers himself a loner and has "trouble wanting friends." R. 8-7, PID 716. In December 2015, the same

provider notes that Deaner reported that he did not want to be around people and just wanted to "go home, shut the door and not talk to anyone." *Id.* at PID 721. The February 2016 notes state that Deaner was reporting isolating himself often, and that Deaner is afraid to go to the dentist and had actually hit the dentist at one point because he got "so worked up." *Id.* at PID 729. Records from a September 2016 appointment stated that Deaner reported that he stays in his house and does not go anywhere and that he experiences panic attacks about once a week.

In August 2017, Deaner was admitted to a psychiatric hospital due to suicidal ideation. His psychiatric therapist, Angela Puckett, APRN, who the same day referred Deaner to the emergency room, noted in her assessment of Deaner that he reported "increased isolation" and said he "just stays in the bedroom." *Id.* at PID 509. Puckett also stated "[a]goraphobia noted- panic attacks reported." *Id.* The assessment noted that Deaner "has been isolating self in room since admission," and noted Deaner's report that he does not like being around people and that people make him nervous. *Id.* at PID 487. The record from his admission also notes "panic disorder" as one of his diagnoses. *Id.* at PID 489. Deaner's discharge summary included the following note in his plan of care: "Goal: Refrain from isolation" and "Outcome: Not Progressing." *Id.* at PID 507. In follow-up visits, Puckett noted that Deaner did not "want to get out of the house," reported having "ongoing panic attacks," and stated that "he has a lot of fear upon leaving his room that something bad is going to happen." *Id.* at PID 752. On a subsequent visit, Puckett noted that Deaner was continuing to have panic attacks, reported feeling like he "was going to die" when he went into a Walmart, and said that his "agoraphobia continues." *Id.* at PID 766. In a later visit, in February 2018, Puckett noted that Deaner reported being "unable to go out in public anymore" due to anxiety and that "he will 'freak out.'" *Id.* at PID 774. Based on the above, the ALJ's determination that

Deaner's panic attack with agoraphobia was a "one-time diagnosis" by consultative examiner Walpert is not supported by substantial evidence.

The ALJ deferred to the findings of the state psychological consultants in dismissing Deaner's diagnosis of panic disorder with agoraphobia. The ALJ explained that he found "the assessments of the State agency medical consultants and State agency psychological consultants to be the most persuasive opinions in the record. The consultants are policy experts, and they provided a detailed narrative to support their assessments." R. 8-2, PID 64. To begin, I disagree with this characterization. The state agency psychological consultants did not provide a detailed narrative to support their assessments. Dr. Prout stated that the consultative examiner's findings were "less persuasive" because the claimants "performance at the [consultative examination] is very questionable," and said there were "multiple contacts with other providers that do not note deficits which would have [been] very clear if the results were valid." R. 8-3, PID 182. Although not entirely clear, this may have been more of a concern with the examiner's diagnosis of intellectual disability than with the panic-disorder diagnosis. In the end, Dr. Prout found that each of the consultative examiners' opinions were "an overestimate of the severity of the individual's restrictions/limitations," and that Deaner had the ability to work with some limitations. *Id*. Dr. Prout provided no independent assessment or analysis of Deaner's social anxiety, frequently reported panic attacks, or tendency to isolate himself from others Dr. Bornstein copied Dr. Prout's assessment verbatim.

According to the recently amended regulations, ALJs "are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."

20 C.F.R. § 404.1513(a). Because the ALJ found the evidence in the record inconsistent, the ALJ was required to "consider the relevant evidence and see if [he could] determine whether [Deaner is] disabled based on the evidence" available. 20 C.F.R. § 404.1520b. For claims filed on or after March 27, 2017, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion" and in considering the persuasiveness of any particular medical opinion or finding in the record, the ALJ is instructed to primarily consider the supportability and consistency of the opinion(s) from each source. 20 C.F.R. § 404.1520c. In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be. 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). An ALJ may also consider the source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant or merely reviewed evidence in the claimant's file; whether the medical opinion is offered by a specialist; and other factors such as the source's familiarity with other evidence in the claim or understanding of the disability program policies, though analysis of these factors is not required. *See* 20 C.F.R. § 404.1520c(c)(3)–(5).

Contrary to the requirements of the regulations, the ALJ did not properly consider the persuasiveness of the varying pieces of evidence in the record under the framework laid out by Section 404.1520. The ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported Deaner's

claims, nor did he analyze the evidence under any of the other discretionary factors an ALJ may use to assess conflicting evidence.

The ALJ did note that Walpert's diagnoses were not persuasive in part because she based her assessment on a one-time assessment and did not review Deaner's medical records. This could arguably be construed as an assessment of supportability and given that the state consultants did review the relevant medical records it was not unreasonable for the ALJ to find that, on the whole, the state consultant's evaluations relied on more supportable evidence than Walpert's diagnosis. But as to the diagnosis of panic disorder with agoraphobia specifically, the state consultants never explicitly analyzed the issue or explained what evidence they relied on in finding that the diagnosis was unsupported by the record, and the ALJ did not discuss or acknowledge this deficiency. Thus, to the extent that the ALJ's comparison of the evidence reviewed by Walpert and the state consultants was an analysis of supportability, the analysis was insufficient to find that Walpert's diagnosis of panic disorder with agoraphobia was less persuasive than the state consultants' contrary findings.

More importantly, the ALJ failed to consider the other pieces of evidence in the record that conflicted with the state consultants' conclusions and did not explain why the state consultants' conclusions were more persuasive than that evidence. In particular, the ALJ did not acknowledge the state consultants' finding that Deaner did not suffer from panic disorder with agoraphobia conflicted with the diagnoses of his psychiatric therapist, which were clearly documented on numerous occasions in the record. Nor did the ALJ provide any explanation for why the evaluations of the state consultants were more supportable or consistent than the diagnoses of Deaner's therapist, such that the psychiatric records should be disregarded. And a basic comparison of the psychiatric records and the state consultants' reports, provides no support for

the conclusion that the consultants' reports were more supportable or consistent than Deaner's psychiatric records.

As to supportability, the evidence and explanations provided by Deaner's psychiatric therapist for the diagnoses of panic disorder and agoraphobia were extensive and well-supported, in contrast to the state consultants' reports, which essentially ignored the issue altogether. As to consistency, Deaner's mental-health records which document many appointments of the course of several years are remarkably consistent in their findings and notations of worsening social anxiety and panic related to leaving home and being around others, and are also consistent with Walpert's report and the reports provided by prior consultative examiners.

The ALJ pointed out notations of normal mental status and normal eye contact by non-mental-health providers noted in checklists on Deaner's medical charts, perhaps to imply that the state consultants' finding that Deaner did not suffer from panic disorder with agoraphobia was consistent with medical records. But these records were from providers that are not mental-health professionals and were treating Deaner for unrelated medical problems. Thus, it was not reasonable for the ALJ to accord these form chart notations more weight than the consistent diagnoses and detailed observations of the medical professionals responsible for Deaner's mental-health care, which the ALJ essentially ignored in his analysis. *See* 20 C.F.R. § 404.1520c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty."). Moreover although Deaner was repeatedly diagnosed with agoraphobia, and his panic attacks upon leaving home and being in public were consistently reported throughout the record,

it is worth noting that *all* of his mental-health examiners and therapists, including the consultative examiners, observed that he was pleasant and cooperative, and that he maintained rapport, and yet frequently included diagnoses of panic disorder and agoraphobia in their records. Thus, descriptions of Deaner from non-mental-health medical providers as presenting with a normal or pleasant affect, or maintaining eye contact, do not conflict with the observations of providers who nonetheless diagnosed Deaner with agoraphobia and panic disorder.

The ALJ also made much of the fact that Deaner attended frequent medical appointments, seemingly implying that Deaner could not have agoraphobia or panic upon leaving the home if he was able to attend the appointments. But a thorough review of Deaner's medical charts reveals that Deaner often reported extreme and unmanageable pain that required medication and treatment. It is unreasonable to hold Deaner's attendance at doctor's offices against him for the purpose of evaluating his agoraphobia diagnosis.

Based on the foregoing, it is clear that Deaner's psychiatric therapist's diagnosis of panic disorder, as well as Walpert's diagnosis of panic disorder with agoraphobia, were consistent with each other and the majority of the record, and that the state consultants' evaluations, which failed to acknowledge Deaner's social anxiety, panic attacks, and isolation in its evaluation of his impairments, was inconsistent with the relevant evidence in the record, and not supportable.

In sum, the ALJ's determination that Deaner did not have a severe diagnosis of panic disorder with agoraphobia was not supported by substantial evidence. The ALJ came to this conclusion based on substantial deference to the state consultants' evaluations, which barely addressed Deaner's allegations of anxiety, panic disorder, and agoraphobia, rather than the consistent and well-supported diagnoses of panic disorder and agoraphobia in the records of Deaner's treating psychiatric therapist, which was echoed by the diagnosis provided by the

consultative examiner. This analysis was contrary to the regulations, which instruct ALJ's to evaluate the persuasiveness of conflicting medical opinions in the record based primarily on supportability and consistency, and to provide an articulation of that analysis in their opinions. The ALJ did not articulate the applications of these factors to the relevant evidence, and an independent evaluation of the supportability and consistency of the competing evidence demonstrates that the decision to accord controlling weight to the state consultants was improper.

## I. Harmless Error Analysis

The ALJ's failure to accept Deaner's panic disorder with agoraphobia diagnosis was not harmless error. Although the ALJ stated that he considered all severe and non-severe impairments in his assessments, as noted above, it is clear that the ALJ did not merely dismiss the *severity* of Deaner's panic disorder with agoraphobia diagnosis; he found that the diagnosis itself was not supported. Thus, it is not reasonable to accept that the ALJ went on to consider this diagnosis in his subsequent findings.

## II. The ALJ's Step Three Finding of No Per Se Disability

The ALJ's determination that Deaner did not meet or medically equal Impairment Listing 12.06 (anxiety) was not supported by substantial evidence. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.06. A finding under Impairment Listing 12.06 requires:

A.  Medical documentation of the requirements of paragraph 1, 2, or 3:

1. Anxiety disorder, characterized by three or more of the following;
a. Restlessness;
b. Easily fatigued;
c. Difficulty concentrating;
d. Irritability;
e. Muscle tension; or
f. Sleep disturbance.

2. Panic disorder or agoraphobia, characterized by one or both:

a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or

b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

3. Obsessive-compulsive disorder, characterized by one or both:

a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or

b. Repetitive behaviors aimed at reducing anxiety.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id.* As noted previously, there is medical documentation in the record of both panic disorder and agoraphobia. Deaner clearly presented medical documentation sufficient to satisfy paragraph A(2). Deaner's medical documentation included numerous notations, across several years, indicating his fear of going out in public, including notations that he could not go to the dentist for fear of anxiety attacks, and had panic attacks when going in stores such as Walmart, and was afraid to leave the house. Thus, although the ALJ did not specifically address this fact in his opinion, Part A is clearly met. As for Part B, the ALJ's determination that Deaner does not meet the criteria

of Part B was not supported by substantial evidence, and was likely driven, at least in part, by the fact that the ALJ failed to accept Deaner's well-documented medical history of panic disorder and agoraphobia.

To start, the ALJ's conclusion that Deaner has only a moderate limitation in interacting with others is not supported by substantial evidence. A finding of moderate limitation is appropriate where the claimant's "functioning in th[e] area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(c)(6)(F)(2). In support of his finding of moderate limitation, the ALJ cited a 2014 consultative examination in which Deaner said he socialized with friends, a report of talking to friends and family, and Deaner's statement that he has never lost a job due to problems getting along with people. The ALJ's reliance on evidence from 2014 and prior is unreasonable where Deaner has not been employed since 2014 and his mental-health records show that his agoraphobia and social anxiety developed and significantly worsened between 2015 and 2018. Deaner's mental-health provider's notes from September 2015 report that Deaner considers himself a loner and has "trouble wanting friends." R. 8-7, PID 716. The December 2015 notes state that Deaner reported that he did not want to be around people and just wanted to "go home, shut the door and not talk to anyone." *Id.* at PID 721. The February 2016 notes state that Deaner reported isolating himself often and being afraid to go to the dentist, and that he had actually hit the dentist at one point because he got "so worked up." *Id.* at PID 729. Notes from a September 2016 appointment stated that Deaner reported that he stays in his house and does not go anywhere and that he experiences panic attacks about once a week. Deaner's December 2016 provider notes state that he doesn't want to go out of the house, that he reports ongoing panic attacks, and that he has "a lot of fear upon leaving his room that something bad is going to happen." *Id.* at PID 752. In August

2017, his provider notes "increased isolation," and makes notations of "agoraphobia" and "panic attacks." *Id.* at PID 759. That month Deaner was hospitalized due to increasing depression and anxiety with suicidal ideation, and his hospital records state that he "isolated self in room since admission," and that at discharge he had not progressed in refraining from isolation. *Id.* at PID 504–07. The record for October 2017 notes that Deaner's agoraphobia is continuing and that he had a panic attack last time he went to Walmart. And, finally, the February 2018 notes state that Deaner reported inability to go out in public due to anxiety because he will "freak out." *Id.* at PID 775.

The foregoing records clearly show a progressive worsening of Deaner's condition between 2015 and 2018. Thus, it was unreasonable for the ALJ to base his assessment of Deaner's condition on Deaner's reported socialization in 2014, without recognition of Deaner's clear decline. Deaner's mental-health records paint a consistent picture of a worsening case of agoraphobia that severely impacted his ability to socialize or even leave his home in many instances and caused frequent panic attacks. Thus, the record did not contain sufficient evidence from which the ALJ could reasonably conclude that Deaner had only moderate limitations in interactions with others. The records are clear that by 2018, Deaner was far more limited, and thus a finding of at least marked limitation, defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited," was warranted. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(c)(6)(F)(2).

As to the ALJ's determination that Deaner has only a moderate limitation in adapting or managing himself, I would once again find that this is not supported by substantial evidence. The record is consistent in showing that Deaner's ability to "regulate emotions, control behavior, and maintain well-being in a work setting" including "adapting to changes," "managing

psychologically based symptoms," and "making plans [] independently of others," is severely impaired. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(c)(6)(E)(4). Consistent mental-health assessments throughout the entire record, including from an in-patient behavioral health unit, a treating psychiatric therapist, and a neurologist show: that Deaner suffers from audiovisual hallucinations in which he reports seeing people who are not there; that he is unable to leave his home other than for doctor's appointments due to panic attacks; that he does not manage bills, cook or clean for himself; that his girlfriend manages his medications; and that he needs reminders to attend to basic personal hygiene. Even if the ALJ dismissed all of the consultative examinations in the record, there is no basis in any mental-health or neurological assessment from the last several years that would support a finding that Deaner's ability to control and regulate his psychological state is not significantly impaired. Thus, this finding is not supported by substantial evidence. Deaner's ability to adapt and manage is at least a marked limitation and may be an extreme limitation.

Given that two of the ALJ's findings of mere moderate limitation were not supported by substantial evidence and substantial evidence supports finding at least marked limitation in both areas, Deaner met the criteria of at least two marked limitations under category B. Therefore, the ALJ should have found that Deaner has a per se disability and granted Deaner supplemental security income and disability insurance benefits under the regulations.

For the foregoing reasons, I respectfully dissent.